UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

JAMES HAMILTON,

       Plaintiff,

   -against-

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, NEW YORK
CITY POLICE COMMISSIONER, NEW
YORK CITY POLICE OFFICER BARNES,
and NEW YORK CITY POLICE OFFICER
"JOHN DOES" 1-2, the name being
fictitious, the persons intended
being male police officers
involved in the subject incident
of September 12, 2004, and NEW
YORK CITY POLICE OFFICER "JANE
DOE", the name being fictitious,
the person intended being a
female police officer involved in
the subject incident of September
12, 2004,

       Defendants.

--------------------------------X


--------------------------------X

JAMES HAMILTON,

       Plaintiff,

   -against-

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, NEW YORK
CITY POLICE COMMISSIONER, and NEW
YORK CITY POLICE OFFICER GUY
LEWIS,

       Defendants.

--------------------------------X

MEMORANDUM and ORDER

Civil Action No.

CV-07-3633(DGT)

Civil Action No.

CV-07-3825(DGT)

Trager, J:

James Hamilton ("plaintiff") brings this consolidated action against the City of New York, the New York City Police Department ("NYPD"), the Police Commissioner, Sergeant Brian Byrnes[1] ("Sergeant Byrnes"), Officer Carla Guy-Lewis[2] ("Officer Guy-Lewis") and two unnamed male NYPD officers (collectively referred to as "defendants"), alleging: (1) discrimination in violation of 42 U.S.C. § 1981 and the Thirteenth Amendment; (2) false arrest, excessive force and failure to intervene in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment; and (3) various state common law tort claims, all arising from his allegedly unlawful arrest on September 12, 2004. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on all of plaintiff's claims. For the below reasons, defendants' motion in the case with docket number CV-07-3633 is granted in part and denied in part. Defendants' motion in the case with docket number CV-07-3825 is granted in full.

---

[1] Sergeant Byrnes is being sued here as "New York City Police Officer Barnes."

[2] The "Jane Doe" named in CV-07-3633 appears to refer to Officer Guy-Lewis, as she was the only female officer present during the September 12, 2004 incident.

2

## Background

### (1)

In 1988, plaintiff plead guilty to robbery in the first degree and received a sentence of six to twelve years. Deposition of James Hamilton ("Hamilton Dep.") at 50. Plaintiff was released on parole in 1995 after having served seven years of his sentence. Id. at 51,53. On being released, plaintiff agreed to abide by certain conditions of parole. See Declaration of Dara L. Weiss in Support of Mot. for Summ J. ("Weiss Decl."), Ex. B.[3] One of the conditions of his parole required that he remain at a specific authorized residence, known to his parole officer, between the hours of 10 p.m. and 7 a.m.[4] Id.; Hamilton Dep. at 55. Plaintiff was, therefore, required to inform his parole officer if he either wanted to stay out past his curfew or stay at a different residence. Id. at 55-56.

In January 2004, plaintiff moved in with Celeste Jennings, his girlfriend and the mother of two of his children.[5] Hamilton

---

[3] On June 17, 1997, plaintiff was charged with violating the conditions of his parole. See Weiss Decl., Ex. C. Specifically, on March 18, 1997 plaintiff was arrested for hitting his live-in girlfriend, Ivory Mills, and on May 20, 1997 plaintiff was arrested for marijuana possession. Id. Plaintiff's parole was restored on January 9, 1998 with the same conditions as his 1995 release. Weiss Decl., Ex. D.

[4] At some point, plaintiff's curfew was modified to start at 11:00 p.m. Hamilton Dep. at 62.

[5] Plaintiff, however, did not have a key to her apartment, relying on Jennings to provide him access to the residence.

Dep. at 16, 20-21; Deposition of Celeste Jennings ("Jennings Dep.") at 7-8, 11. Jennings lived in an apartment located at 108 Northfolk Street in Manhattan. Jennings Dep. at 7. Although plaintiff informed his parole officer of the residence change, he would frequently spend the night at his mother's apartment in Brooklyn without first telling his parole officer. Hamilton Dep. at 64-65, 68-69.

On Saturday September 11, 2004, after arriving at Jennings' apartment from work, plaintiff and Jennings got into an argument. Id. at 81. The argument escalated, and Jennings asked plaintiff to leave. Id. at 81-82. When plaintiff refused, she dialed 911 for assistance. Id.; Jennings Dep. at 14. Two officers responded to the call, arriving at the apartment sometime after 8:00 p.m. Hamilton Dep. at 82. Jennings told the officers that she wanted plaintiff out of the apartment. Weiss Decl., Ex. F.

Plaintiff explained to one of the officers that he had been living in the apartment for the last eight months. Hamilton Dep. at 83. He also informed the officer that he could not leave the apartment without first notifying his parole officer, with whom he would be unable to get in contact with until Monday. Id. Plaintiff presented the officer with a health insurance card displaying his address as 108 Northfolk Street. Id. The officers told Jennings that there was nothing they could do to

─────────────────────

Hamilton Dep. at 80; Jennings Dep. at 20.

4

force plaintiff out of the apartment, where he apparently resided. <u>Id.</u> at 85-86.

Prior to leaving, the officers advised plaintiff that it was in his best interest to leave the apartment voluntarily, which plaintiff promised to do. <u>Id.</u> at 86. Shortly thereafter, plaintiff left the residence to attend a friend's party. <u>Id.</u> Plaintiff stayed at the party until 3:30 a.m. <u>Id.</u> at 87. He then went to have breakfast with another friend.[6] <u>Id.</u>

At approximately 5:30 a.m., plaintiff left a message on Jennings' answering machine threatening to have the police escort him into the apartment to gather his belongings if she refused to open the door. <u>Id.</u> at 91. Jennings complied, permitting plaintiff to access the apartment. <u>Id.</u> at 91-92. She claims, however, that she had only opened the door to allow plaintiff to gather his belongings. Jennings Dep. at 20-21. When Jennings saw that plaintiff had sat down on her couch, she told plaintiff to leave. <u>Id.</u> at 21. When plaintiff refused, she again called the police. <u>Id.</u> Plaintiff denies that this conversation ever took place, asserting that he fell asleep on the couch not long after having arrived at the apartment. Hamilton Dep. at 92-93. He also alleges that he was unaware that Jennings had telephoned the police. <u>Id.</u> at 97.

---

[6] Plaintiff acknowledges that he failed to inform his parole officer that he would be staying out past his curfew, as required by the conditions of his parole. Hamilton Dep. at 87.

Four police officers arrived at Jennings' apartment in response to her 911 call, including Sergeant Byrnes, Officer Scott Ferretti, Officer Guy-Lewis and Officer Mejia Gersen.[7] Deposition of Sergeant Brian Byrnes ("Byrnes Dep.") at 13-14, 18. According to Sergeant Byrnes, on arriving in the apartment, Jennings informed him that her boyfriend was violent and that she wanted him out of the apartment. Id. at 26.

At approximately 6:20 a.m., plaintiff was awakened by Sergeant Byrnes, who ordered him to leave the apartment. Hamilton Dep. at 93. Plaintiff, not fully understanding what was happening, told Sergeant Byrnes that he was on parole and presented his health insurance card demonstrating that he resided there. Hamilton Dep. at 95. Plaintiff admitted, however, that he did not pay rent or any of the bills for the apartment. Jennings Dep. at 22. Jennings, who had telephoned plaintiff's mother, handed the cordless phone to plaintiff. Hamilton Dep. at 95-96. Plaintiff's mother told him that he could stay at her house in Brooklyn. Id. at 96. However, plaintiff refused the invitation, telling his mother that if he left the apartment he would be violating the terms of his parole. Id.

---

[7] The officers that responded to Jennings' September 12, 2004 call were not the same officers who had responded to Jennings' 911 call the previous day. Officers Feretti and Gersen are not named defendants in this action. Plaintiff acknowledged that although he was aware of the presence of the three other officers, he never interacted with anybody other than Sergeant Byrnes. Hamilton Dep. at 97-98, 128.

At some point, Sergeant Byrnes asked plaintiff to stand up from the couch and place his hands behind his back. Hamilton Dep. at 97. Sergeant Byrnes then handcuffed and escorted plaintiff out of the apartment. Id. at 97. Plaintiff alleges that, as they exited the apartment, Sergeant Byrnes purposely tripped him, causing plaintiff to fall, face-first, to the floor. Id. at 98-99. As a result of the fall, plaintiff suffered a laceration to the right side of his face. Id. at 102-03. Sergeant Byrnes then put his knee on plaintiff's back, lifted him up and walked plaintiff downstairs. Id. at 100. Plaintiff was then placed in a police car and taken to the Seventh Precinct. Id. at 102, 105.

Sergeant Byrnes' account is quite different, claiming that he took several additional measures before placing plaintiff under arrest. He denies ever having tripped plaintiff, claiming that the only reason plaintiff was on the ground was because he was resisting arrest. Specifically, Sergeant Byrnes alleges that after receiving plaintiff's initial refusal to exit the apartment, he explained to plaintiff that it was criminal trespass not to comply with the owner's request that he leave. Byrnes Dep. at 31-32. Sergeant Byrnes then brought one of Jennings' sons to another room where he confirmed that plaintiff did not live in the apartment. Id. at 32-33. According to Sergeant Byrnes, he requested that plaintiff leave the apartment

7

several more times, in the hope that he would not have to arrest him, but plaintiff continued to refuse.  Id. at 33-34, 36-37. Moreover, Sergeant Byrnes denies that plaintiff told him that he was on parole and that it would be a violation for him to leave the premises.  Id. at 41.

According to Sergeant Byrnes, it was only after these numerous unsuccessful attempts that he assisted plaintiff in standing from the couch and escorted him out of the apartment. Id. at 40-41.  He then handed plaintiff over to Officer Feretti whom he asked to handcuff plaintiff.  Id.  A struggle then ensued between plaintiff and Officer Feretti.  Id. at 42.  Officer Feretti was able to get plaintiff down on the ground.  Id. at 43. Sergeant Byrnes, who came over to assist Officer Feretti in restraining plaintiff, was then either kicked or punched in the left shin.  Id. at 44-45.  The two officers were eventually able to handcuff plaintiff, after which they stood him up and walked him downstairs.  Id. at 46.

Shortly after being placed in a holding cell at the Seventh Precinct, plaintiff was taken to Bellevue Hospital, where he was treated with Bacitracin and a band-aid for a one-centimeter cut to his right temple.[8]  Weiss Decl., Ex. L; Hamilton Dep. at 109-

---

[8] Plaintiff also claims that he felt pain in his back because of the way Sergeant Byrnes lifted him off the ground after plaintiff was tripped.  Hamilton Dep. at 104-05.  The hospital refused to take an x-ray despite him complaining of pain in his back and swelling in his hand.  Id. at 109.

11.  Plaintiff was then returned to holding, where he claims to have witnessed Sergeant Byrnes hitting his own knee with a hammer and taking pictures of the injury with a Polaroid camera. Hamilton Dep. at 111-12.  Plaintiff believed that Sergeant Byrnes was faking the injury to make it look like he had been hurt during plaintiff's arrest.  Id. at 112.  Sergeant Byrnes denies these allegations.  Byrnes Dep. at 54.

Jennings later went down to the police station where Officer Guy-Lewis[9] wrote down her verbal statement.  Jennings signed the police report, and indicated that she agreed with the statements it contained.  Weiss Decl., Ex. J; Jennings Dep. at 28-30. According to the report, on September 12, 2004, Jennings asked plaintiff to leave the premises, but plaintiff refused.  Weiss Decl., Ex. J.  The report further states that plaintiff continued refusing to leave Jennings' apartment even after police officers arrived at the scene, that plaintiff resisted arrest when the police officers tried to handcuff him and that Sergeant Byrnes sustained injury to his lower left leg while assisting with plaintiff's arrest.  Id.  At her deposition, however, Jennings testified that she did not remember signing the statement. Jennings Dep. at 29-30.  She also testified that she did not witness any portion of the interaction between plaintiff and

---

[9] Although Officer Guy-Lewis was listed as the arresting officers, she was just the officer who processed plaintiff when he was already in holding.  Byrnes Dep. at 52-53.

Sergeant Byrnes, and that she remained in another room of the apartment until the police officers left.  Id. at 25-26.

Plaintiff was charged with, among other things, resisting arrest, assault in the third degree and criminal trespass.  Weiss Decl., Ex. O at 1.  The charges, however, were dismissed. Hamilton Dep. at 145-46.


**(2)**

On August 29, 2007, plaintiff brought suit against the City of New York, the Police Commissioner, the NYPD, Sergeant Byrnes, and three unnamed police officers, asserting violations of his constitutional rights under 42 U.S.C. §§ 1981 and 1983 and the Thirteenth and Fourteenth Amendments to the United States Constitution and alleging numerous state law claims.  On September 12, 2007, plaintiff filed a separate action against Officer Guy-Lewis, the City of New York, the Police Commissioner and the NYPD, alleging the same sets of facts and causes of action.  On October 19, 2007, the two actions were consolidated.

Defendants move for summary judgment on all of plaintiff's claims, arguing that: (1) plaintiff's false arrest claim fails as a matter of law because probable cause existed for plaintiff's arrest and because Officer Guy-Lewis had no involvement in his arrest; (2) plaintiff cannot sustain his claims for violation of 42 U.S.C. § 1981 and the Thirteenth Amendment; (3) plaintiff's

excessive force claim fails because plaintiff sustained only <u>de</u> <u>minimis</u> injuries and because Officer Guy-Lewis had no personal involvement in the use of excessive force; (4) plaintiff's failure to intervene claim fails as a matter of law; (5) Sergeant Byrnes and Officer Guy-Lewis are entitled to qualified immunity; (6) plaintiff's claim against the New York City Police Department must be dismissed because the police department is a non-suable entity; (7) plaintiff cannot sustain a claim for municipal liability against the City of New York or the Police Commissioner; and (8) plaintiff's state law claims must be dismissed because plaintiff failed to comply with the notice of claim requirements of the New York General Municipal Law and the claims are barred by the statute of limitations.

The only causes of action addressed in plaintiff's memorandum of law in opposition to defendants' motion for summary judgment, are his claims for false arrest and excessive force against Sergeant Byrnes. Additionally, plaintiff specifically "request[ed] that the instant motion seeking summary judgment be denied to the extent opposed" in his memorandum of law. Pl.'s Mem. of Law in Opp'n to Def.s' Mot. for Summ. J. at 8. Accordingly, the claims not discussed in plaintiff's memorandum are deemed abandoned and are thus dismissed. <u>See</u> <u>Taylor v. City of New York</u>, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary

judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); see also Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

## Discussion

### (1)

### Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried . . . ." Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). When deciding a motion for summary judgment, a court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006). Summary judgment

cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The law is 'well established that "conclusory statements, conjecture, or speculation"' are inadequate to defeat a motion for summary judgment." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 85 (2d Cir. 2005) (quoting Opals on Ice Lingerie v. Body Lines, Inc., 320 F.3d 362, 370 n.3 (2d Cir. 2003)). Instead, "the [non-moving] party must produce specific facts sufficient to establish that there is a genuine factual issue for trial." Sacay v. Research Found. of the City Univ. of New York, 193 F. Supp. 2d 611, 624 (2d Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

## (2)

### Qualified Immunity

Sergeant Byrnes argues that even if plaintiff's constitutional rights were violated, he is entitled to qualified immunity. "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" Pearson v. Callahan, 555 U.S. ---, 129 S. Ct. 808, 815 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511 (1985)) (alteration in original). Thus, the Supreme Court has stressed the importance

of making a qualified immunity determination at the earliest possible stage in the litigation.  Id.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence in analyzing the availability of qualified immunity.  First, a court must decide whether the facts alleged or shown by the plaintiff demonstrate that the defendant's conduct violated a constitutional right.  Id. at 201. Where no constitutional violation has been shown, additional inquiry is unnecessary.  Id.  If, however, the plaintiff demonstrates that the defendant violated a constitutional right, then the court must determine whether the right at issue was "clearly established" at the time of the alleged misconduct.  Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.

In Pearson v. Callahan, 555 U.S. ---, 129 S. Ct. 808 (2009), the Supreme Court overruled the mandatory nature of the sequence requirement established in Saucier, finding that the sequence: "should no longer be regarded as mandatory. [Instead, the] judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular

case at hand." Id. at 818. The Court noted, however, that although the Saucier two-part sequence is no longer mandatory, it is still often beneficial. Id.

A police officer is entitled to qualified immunity from federal claims where: "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged action." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (quoting Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001)). "The objective reasonableness test is met – and the defendant is entitled to immunity – if officers of reasonable competence could disagree on the legality of the defendant's actions." Thomas v. Roach, 165 F.3d 137, 143 (2d. Cir. 1999) (quoting Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995)) (internal quotation marks omitted). However, "[q]ualified immunity does not protect those who are 'plainly incompetent or those who knowingly violate the law.'" Weyant, 101 F.3d at 858 (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)) (internal quotation marks omitted).

Sergeant Byrnes cannot benefit from qualified immunity on plaintiff's excessive force claim because a material issue of fact exists as to whether he intentionally tripped plaintiff

while plaintiff was handcuffed.[10]  As discussed more fully below,
viewed in the light most favorable to plaintiff, Sergeant Byrnes'
action amounted to a constitutional violation.  Furthermore, a
reasonable police officer would have known that purposely
tripping a handcuffed suspect, who was not resisting arrest or
provoking the officer, constitutes the use of excessive force.
Cf. Davis v. City of New York, No. 04-CV-3299, 2007 WL 755190, at
*16 (E.D.N.Y. Feb. 15, 2007) (finding that "a reasonable officer
should have known that the kicking of a handcuffed resident
subdued on the floor during the execution of a search violates a
clearly established constitutional right not to be subjected to
excessive force during a search."); Ostroski v. Town of Southold,
443 F. Supp. 2d 325, 343 (E.D.N.Y. 2006) ("[A] reasonable officer
should have known that repeatedly striking a subdued suspect
violates a clearly established constitutional right not to be
subjected to excessive force during arrest.").  Finally, it was
not "objectively reasonable" for Sergeant Byrnes to believe that
it was lawful to trip plaintiff under such circumstances.
Plaintiff's testimony thus creates an issue of fact as to whether
Sergeant Byrnes is entitled to qualified immunity, precluding a
grant of summary judgment on his excessive force claim.   See

---

[10] As discussed in more detail below, probable cause existed
for plaintiff's arrest.  Accordingly, it is unnecessary to
determine the qualified immunity defense with regard to that
claim.

<u>Jones v. Parmley</u>, 465 F.3d 46, 63 (2d Cir. 2006).

### (3)

### Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." <u>Snider v. Dylag</u>, 188 F.3d 51, 53 (2d Cir. 1999). The plaintiff must also show the personal involvement of each defendant. <u>See</u> <u>Back v. Hastings On Hudson Union Free School Dist.</u>, 365 F.3d 107, 122 (2d Cir. 2004) (stating that in "this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977))). It is undisputed that Sergeant Byrnes was acting under color of state law and that he was personally involved in plaintiff's arrest. The only question that remains is whether his conduct deprived plaintiff of any rights guaranteed under the Constitution.

### A.    False Arrest

Plaintiff claims that he was falsely arrested by Sergeant Byrnes. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable

17

seizures, including arrest without probable cause is

substantially the same as a claim for false arrest under New York

law."[11]  Weyant v. Okst, 101 F.3d 845, 852 (2nd Cir. 1996)

(internal citation omitted).  In order to demonstrate false

arrest under New York law, a plaintiff must show that: "(1) the

defendant intended to confine the plaintiff, (2) the plaintiff

was conscious of the confinement, (3) the plaintiff did not

consent to the confinement, and (4) the confinement was not

otherwise privileged."  Bernard v. United States, 25 F.3d 98, 102

(2nd Cir. 1994).  There is no doubt that plaintiff was confined,

was aware of the confinement and objected to it.  The only open

issue is whether the confinement was privileged.

The existence of probable cause creates such a privilege and

---

[11] Plaintiff brings his § 1983 claims under the Fourteenth
Amendment.  The Supreme Court has stated that "[w]here a
particular Amendment 'provides an explicit textual source of
constitutional protection' against a particular sort of
government behavior, 'that Amendment, not the more generalized
notion of "substantive due process," must be the guide for
analyzing these claims.'"  Albright v. Oliver, 510 U.S. 266, 273
(1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  It
is clear that an excessive force claim arising out of a
plaintiff's arrest are to be analyzed under the Fourth Amendment.
Graham, 490 U.S. at 395 (finding that "all claims that law
enforcement officers have used excessive force-deadly or not-in
the course of an arrest . . .  should be analyzed under the
Fourth Amendment and its 'reasonableness' standard, rather than
under a 'substantive due process' approach.") (emphasis in
original).  Plaintiff's false arrest and excessive force claims
will thus be analyzed under the Fourth Amendment, which protects
against the type of unreasonable search and seizure which
plaintiff claims he was subjected to.

"is a complete defense to an action for false arrest." <u>Weyant</u>, 101 F.3d at 852 (quoting <u>Bernard</u>, 25 F.3d at 102)). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." <u>Weyant</u>, 101 F.3d at 852. The "probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." <u>Jaegly v. Couch</u>, 439 F.3d 149, 153 (2d Cir. 2006) (citing <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153 (2004)).

Even when viewing the evidence in the light most favorable to plaintiff, it is evident that Jennings' statements to Sergeant Byrnes established probable cause for his arrest. "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." <u>Martinez v. Simonetti</u>, 202 F.3d 625, 634 (2d Cir. 2000) (quoting <u>Miloslavsky v. AES Eng'g Soc'y, Inc.</u>, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), <u>aff'd</u>, 993 F.2d 1534 (2d Cir. 1993)); <u>see also</u> <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging

someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."). Plaintiff was arrested for criminal trespass and charged with criminal trespass in the second degree. Under New York law, "[a] person is guilty of criminal trespass in the second degree when he knowingly enters or remains unlawfully in a dwelling." N.Y Penal Law § 140.15. Jennings told Sergeant Byrnes that she asked plaintiff to leave the apartment, creating probable cause that he was in the apartment unlawfully.[12]

The information that Sergeant Byrnes received from Jennings was more than sufficient to establish probable cause that plaintiff was guilty of criminal trespass in the second degree. Jennings revoked plaintiff's right to be in the apartment, which she was permitted to do as the renter of the apartment. See e.g., Arum v. Miller, 331 F. Supp. 2d 99, 109-10 (E.D.N.Y. 2004) (finding that probable cause supported the plaintiffs' arrest for criminal trespass in the third degree when school official, who was capable of revoking the plaintiffs' permission to be in school, told police that he had asked the plaintiffs to leave the school premises). Furthermore, there was no reason for Sergeant Byrnes to doubt that Jennings was telling him the truth about plaintiff's right to be in the apartment.

---

[12] Plaintiff himself acknowledged that he knew that Jennings did not want him in the apartment. He was merely unaware that Jennings had called the police to effectuate his departure.

Plaintiff argues that Sergeant Byrnes should have investigated his protestations of innocence prior to arresting him for trespass. Specifically, plaintiff contends that he informed Sergeant Byrnes that he lived in the apartment, and even presented a health insurance card listing the apartment's address. Plaintiff also explained to Sergeant Byrnes that the conditions of his parole required that he remain in the apartment and that by ordering him to leave he was forcing plaintiff to choose between being arrested and violating those conditions.[13] Plaintiff essentially claims that Sergeant Byrnes was under a duty to contact plaintiff's parole officer to verify his statements before arresting him.[14]

Sergeant Byrnes, however, was not required to conduct an independent investigation of plaintiff's claims of innocence. It is well established that "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate

---

[13] Plaintiff appears to be concerned about obeying the terms of his parole only when such conditions enure to his benefit. For example, he openly admits staying out at a party until approximately 3:30 a.m. on the day of his arrest, in blatant violation of his curfew, and admits that, on several occasions, he spent the night at his mother's house without first informing his parole officer.

[14] At his deposition, plaintiff testified that he told the officers, who responded to Jennings' first 911 call, the night before, that he could not get in contact with his parole officer until the following Monday. Plaintiff does not explain how Sergeant Byrnes could have reached his parole officer at 6:20 a.m. on a Sunday, nor does he allege that he informed Sergeant Byrnes of his parole officer's name or contact information.

probable cause." Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir. 2006); see also Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").  Although police officers are not permitted to ignore exculpatory evidence, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.  Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989).  Thus, Sergeant Byrnes did not need to either call plaintiff's parole officer or attempt to determine the accuracy of the information displayed on plaintiff's health insurance card prior to crediting Jennings' statements and concluding that probable cause existed.  See Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (finding that where an eyewitness account gives rise to probable cause, but conflicts with the arrestee's account of events, "the arresting officer does not have to prove plaintiff's version wrong before arresting him").  Plaintiff's false arrest claim against Sergeant Byrnes must therefore be dismissed.

**B.    Excessive Force**

Plaintiff also alleges that Sergeant Byrnes used excessive force against him when he purposely tripped plaintiff, causing him to fall, face-first, to the floor.  A police officer's "application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  The test of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  In determining whether the force used during an arrest was reasonable, a court considers how a reasonable officer facing the same circumstance would have behaved.  Graham, 490 U.S. at 396.

Taking plaintiff's version of the events as true, a reasonable juror could find that the force used by Sergeant Byrnes' was "objectively unreasonable."  There are two conflicting accounts as to what transpired on the date of plaintiff's arrest.  Plaintiff claims that Sergeant Byrnes

purposely tripped him while he was being escorted, in handcuffs, out of Jennings' apartment, causing him to fall to the floor and cut his face. Sergeant Byrnes denies these allegations, asserting that plaintiff was resisting arrest, and that a struggle ensued to restrain plaintiff.[15] The Supreme Court has recognized that physical force is often necessary to effectuate an arrest and thus "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). However, where a plaintiff is in handcuffs and fully cooperating with police officers, even a single "push or shove" may be deemed unreasonable. See Pierre-Antoine v. City of New York, No. 04 Civ. 6987, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (noting that it is harder to maintain that force was necessary where such force was used while the plaintiff was in handcuffs). Plaintiff

---

[15] The general rule is that a district court "may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005). An exception lies where the court determines that no reasonable juror could credit the plaintiff's testimony where it is filled with inconsistencies and improbabilities. Here, plaintiff's testimony is neither inconsistent nor does it contain undoubted improbabilities. Therefore, the jury is left with the task of assessing credibility. See Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996))).

testified that he was in handcuffs and not resisting arrest at the time Sergeant Byrnes tripped him.  There would be, therefore, no excuse for using any force on plaintiff as he was neither provoking Sergeant Byrnes nor threatening him in any way.  A reasonable juror could find that it was objectively unreasonable for Sergeant Byrnes to have purposely tripped plaintiff when there was no apparent reason to do so.  See, e.g., Davis v. City of New York, No. 04-CV-3299, 2007 WL 755190, at *12 (E.D.N.Y. Feb. 15, 2007) (refusing to grant summary judgment where the plaintiff testified that the officer kicked her in the shoulder, without any provocation or resistence on her part, while she was lying on the floor in handcuffs); Graham v. Springer, No. 03-CV-6190, 2005 WL 775901, at *6 (W.D.N.Y. Apt. 5, 2005) (denying summary judgment on plaintiff's excessive force claim where plaintiff's evidence indicated that he was kicked while lying on the ground in handcuffs); Jones v. Ford, No. 00-CV-0934, 2002 WL 1009733, at *4 (M.D.N.C. Feb. 15, 2002) ("If Defendant . . . did in fact kick Plaintiff several times while he was on the ground handcuffed, such acts could constitute excessive force in violation of the Fourth Amendment.") (citing Hafner v. Brown, 983 F.2d 570 (4th Cir.1992)).

Defendants argue that any force used did not rise to the level of a constitutional violation because plaintiff's allegations of injury are de minimis.  Defendants cite to a

number of unpublished decisions from the Southern District of New York. These cases, however, are not binding. Additionally, they are not factually similar to the issue presented here, as none of them concerned the application of force by an officer after the plaintiff had already been placed in handcuffs.

For example, <u>Rincon v. City of New York</u>, No. 03 Civ. 8276, 2005 WL 646080 (S.D.N.Y. March 21, 2005), <u>Williams v. City of New York</u>, No. 05 Civ. 10230, 2007 WL 2214390 (S.D.N.Y. July 26, 2007), and <u>Jackson v. City of New York</u>, No. 01 Civ. 10116, 2005 WL 1538205 (S.D.N.Y. June 29, 2005), all involved the use of force by police officers in effectuating an arrest, where courts have recognized that the application of some force is usually permitted. <u>See, e.g.</u>, <u>Jackson</u>, 2005 WL 1538205, at *4 (noting that the plaintiff admitted that he and the arresting detective were "going at it" at the time of his arrest and thus finding "[a] certain level of force in restraining Plaintiff was therefore reasonable"). In such cases, the fact that a plaintiff's injuries were minimal may determine whether the force employed was <u>de minimis</u> and thus not actionable. In contrast, the present action involves the use of force after plaintiff was already subdued, where even a minor use of force may be found to have been unreasonable. Accordingly, evidence of the injury suffered by plaintiff is not particularly instructive.

Another case cited by defendants, <u>Martinez v. City of New</u>

York, No. 06 Civ. 5671, 2008 WL 2566565 (S.D.N.Y. June 27, 2008),
involved a claim of excessive force stemming from the use of
handcuffs on the plaintiff. Police officers are permitted to
handcuff suspects, which may cause these individuals some
discomfort. Where the suspect later brings an action complaining
that police officers made the handcuffs too tight, the minimal
nature of the plaintiff's injuries may serve as conclusive
evidence on whether the force applied was excessive. Id. at *3
(finding that only minimal force was used where the plaintiff
wore the handcuffs for no more than thirty minutes, never sought
medical attention for his shoulder and did not display any signs
of redness, bleeding or any other injury).

Finally, Bove v. New York City, No. 98 Civ. 8800, 1999 WL
595620 (S.D.N.Y. Aug. 6, 1999), involved a claim of excessive
force under the Due Process Clause of the Fourteenth Amendment
where the plaintiff was neither arrested nor seized. Id. at *6
(finding that "the plaintiff's alleged injuries that are
supported by the objective hospital records lead me to conclude
that, as a matter of law, the force - if any - used by the NYPD
on the night in question was at worst, de minimis, and
insufficient to shock this Court's conscience."). The present
action, on the other, involves a claim of excessive force under
the Fourth Amendment where a different standard is employed in
determining liability. See id. at *6 (stating that "A four part

27

test is employed to determine whether an officer's use of force qualifies as excessive under the Fourteenth Amendment").

That plaintiff did not suffer a serious injury here does not entitle defendants to summary judgment on plaintiff's excessive force claim. In deciding whether it is appropriate to grant summary judgment against plaintiff on his excessive force claim, the focus is on the nature and extent of the alleged force used and not on the seriousness of plaintiff's injury. The Second Circuit has made clear that "a de minimis use of force will rarely suffice to state a constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) (emphasis added). This, however, does not mean that a plaintiff must sustain a severe injury in order to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. See Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising."). Although the lack of a serious injury may constitute evidence that there was only a de minimis use of force, it does not entitle a defendant to judgment as a matter of law where the claim is an intentional tripping under circumstances not justifying that action. See Robison v. Via, 821 F.2d 913, 923 (2d Cir. 1987) (noting that while a jury

may consider the lack of serious injury as evidence that the implemented force was not excessive, it does not entitle defendants to judgment as a matter of law).  Instead, it is for the jury to weigh the evidence and determine whether, and to what extent, the minor nature of plaintiff's injury detracts from his testimony concerning the use of excessive force.  Thus, the fact that plaintiff merely suffered, what appears to have been, a minor laceration to the right side of his face, does not detract from the unreasonableness of an officer tripping him while he was handcuffed.

## Conclusion

For the above stated reasons, defendants' motion for summary judgment in the case with docket number CV-07-3633 is granted in all respects except that plaintiff's excessive force claim against Sergeant Byrnes may proceed.

In the case with docket number CV-07-3825, defendants' motion for summary judgment is granted in full and the Clerk of the Court is directed to close that case.


Dated: Brooklyn, New York
      July 23, 2009


                  SO ORDERED:


                  _____/S/_____
                  David G. Trager
                  United States District Judge